## ORSAK v. KASPAR et al. (No. 9215.)

Court of Civil Appeals of Texas. Galveston.
Dec. 6, 1928.

Sidney P. Chandler, of Corpus Christi, for appellant.

PLEASANTS, C. J. This suit was brought by appellant against appellees to recover damages for injury to appellant's land and to crops growing thereon, alleged to have been caused by the wrongful act of appellee Martin Kaspar in diverting the natural flow of surface water from said appellee's land so as to overflow and injure the land and crops of appellant; and to recover actual and exemplary damages from Kaspar and other named defendants, appellees herein, who are sureties upon injunction bonds executed by said Kaspar in suits brought by him against appellant in which temporary injunctions restraining appellant from erecting levees or barriers to protect his land and crops from water wrongfully diverted and discharged thereon by said Kaspar, which injunctions are alleged to have been wrongfully and maliciously sued out and issued; and also to recover actual and exemplary damages from appellee Martin

Kaspar for false imprisonment and the alleged false and malicous prosecution of appellant on a charge of contempt of the court issuing the temporary injunctions against appellant.

The defendants answered by general demurrer and special exceptions, all of which were overruled. They further answered by general denial and a special plea of res adjudicata based upon a judgment of the county court of Wharton county alleged to have been rendered on January 10, 1924, in cause No. 1254 in said court, in which defendant Martin Kaspar was plaintiff and appellant was defendant.

The case went to trial before a jury. After hearing the evidence, the trial court instructed the jury to return a verdict for defendants, and, upon the return of such verdict, rendered judgment in accordance therewith.

■ Under appropriate assignments and propositions, appellant complains of the judgment on the ground that the evidence was sufficient to raise an issue of damages caused by the alleged wrongful acts of the defendant, and therefore the trial court was not authorized to instruct a verdict in favor of defendants.

This complaint must be sustained. Several witnesses testified in effect that, by the construction and maintenance of a turn row near the center of his land, the defendant Martin Kaspar had obstructed the natural flow of surface water falling on his land, and thereby caused a considerable amount of such water which would otherwise flow off in an opposite direction, to flow across plaintiff's land. A map introduced in evidence shows that the natural flow of surface water on appellee Kaspar's land, which is a tract of 100 acres, is, except as to 2 acres of the tract, away from the land of appellant. The county surveyor who made a survey of the land and the map in evidence testified:

"The turn row is higher than this elevation of 99.4 here. Then if it is higher than the elevation indicated there some six inches and goes up to the house, with no openings to let the water through, in my opinion it will bring some water from the Kaspar house east to the Orsak land that wouldn't otherwise come there. * * * That turn row would have a tendency to impound the water and bring it down in a bigger amount than it would ordinarily come if it were not there."

The plaintiff testified as to the location of the turn row going to the Kaspar house, and that there were no openings in that turn row between the culvert and Kaspar's house. He also testified as to the ditches on the sides of the Kaspar turn row and the size of the turn row. He testified that the culvert at the turn in the Kaspar turn row had formerly run east and west, but that,

since the trouble he had been having with Kaspar, Kaspar had changed the culvert so that it would point north and south and towards Orsak's land. Mr. Orsak testified as to the impounding of the water by the Kaspar levee and as to Kaspar coming on the Orsak land and cutting the banks of a ditch he had built on the place to take care of the water that Kaspar was turning on him. He also testified as to the three suits that Kaspar had filed against him, two injunctions and the contempt complaint, and as to his damages thereby, including his physical suffering as well as the money he had been out by reason of Kaspar's prosecution and turning water on him. He told of his physical suffering before and after his prosecution for contempt, and related his relations with Kaspar in full and detail. He told of the many times that Kaspar had come onto the Orsak farm and cut his ditches so as to turn the Kaspar water onto Orsak. He identified the different places on the map in evidence and the natural flow of the water, and told of the Kaspar water coming onto him. He gave the figures setting out his actual losses from crops, and told of the water standing on his land after Kaspar had turned it onto him.

Beno Orsak, the son of the plaintiff, testified as a witness for the plaintiff. Like his father, he testified as to their putting the levee between their place and Kaspar's place in 1918, and that Kaspar helped to do the building of the joint levee between their places on Kaspar's south line. He testified as to the existence of the levee across the center of Kaspar's place, said it was about 7 inches high, and wide enough for two cars to pass on, and that there are ditches on each side of that levee going to Kaspar's house. He testified that there were no openings in that levee from the turn about the center of the Kaspar south line to his house, but that Kaspar made one in June of 1927. That was after this suit was filed on May 10, 1927. He further testified that the culvert in the corner of the Kaspar field had been changed so that it now points toward the Orsak; that it had been changed about two years; and that it formerly pointed down towards the Kaspar pasture. He testified that there had been openings in the turn row going up to Kaspar's house from where it turned to his house about three years ago, but that Kaspar had closed those openings about three years ago, before that time there were openings there. He testified about his father having been brought into court three times and as to the damages suffered by the defendant turning water on his father's land and crops. He also told about his father having hemorrhages when he was brought into court on the contempt proceedings, and how he suffered. He testified about the defendants' threatening and saying they were going to file more suits against his father. He told about the defendant Kaspar cutting the ditch on the Orsak land and about their having to plant 15 acres of cotton over, and about the loss of feedstuffs and cotton when the water had been turned on them on several different occasions. He told about the drainage of the land, and that the water north of the old canal goes northwest. He testified that the water from the Kaspar place came onto the Orsak land, and that, if they did not have a levee between their places, it would come there, and that the levee Kaspar has on his land impounded the water, and caused it to stand on the Orsak land.

■■ The judgment of the county court pleaded by appellees as res adjudicata of the issues presented in this suit is set out in full in the statement of facts. This judgment only determined the right of appellee Kaspar to enjoin appellant from maintaining a levee theretofore erected by him between his land and the 100-acre tract owned by appellee Kaspar at the southwest corner of the Kaspar tract. To what extent, if any, this judgment may bar appellant's claims in this suit is not apparent from the record, and in no event can it affect appellant's claims for damages for the alleged wrongful and malicious acts committed subsequent to the rendition of that judgment. No authority need be cited to sustain the proposition that, when there is evidence sufficient to raise an issue of fact in a case properly before a jury for its decision, a trial court is without authority to order an instructed verdict.

We think this record shows that there was sufficient evidence to evoke the finding of the jury upon the issues presented by the pleadings, and the trial court was not authorized to instruct a verdict for the defendant.

The judgment is therefore reversed, and the cause remanded.

. Reversed and remanded.